# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER KOSCINSKI, ADMINISTRATOR OF THE ESTATE OF MEGAN KOSCINSKI,<br><br>    Plaintiff,<br><br>v.<br><br>FARM FAMILY CASUALTY INSURANCE COMPANY,<br><br>    Defendant. | No. 3:17-cv-472 (MPS) |

## RULING ON MOTION FOR SUMMARY JUDGMENT

Peter Koscinski brings this action as administrator of his daughter Megan Koscinski's Estate against Farm Family Casualty Insurance Company ("Farm Family"). His claims relate to an underlying lawsuit he brought against Harold G. Skinner in Connecticut Superior Court. Koscinski alleged that Skinner negligently caused Megan's death at a party in a home that Skinner owned. Skinner sought defense and indemnification from Farm Family under a homeowner's insurance policy it had issued him. Farm Family denied Skinner's claim, concluding that the events in Koscinski's complaint fell within an exclusion in the policy for bodily injury arising out of the use of a controlled substance. Koscinski and Skinner settled the underlying lawsuit. The settlement stipulated that judgment would be entered for Koscinski in the amount of $345,000. Skinner agreed to pay $45,000 and assigned his rights under the Farm Family policy to Koscinski.

Koscinski then brought this suit against Farm Family arguing that Farm Family must pay the balance of his settlement with Skinner. Farm Family moved for summary judgment, arguing that it had no duty to defend or indemnify Skinner because Koscinski's claims against Skinner fell within the controlled substances exclusion in the policy. I find that there is no genuine dispute of material fact about the applicability of the controlled substances exclusion and that the

claims in Koscinski's case against Skinner fell entirely within that exclusion. I therefore GRANT Farm Family's motion for summary judgment.

I. **Factual Background and Procedural History**

Peter Koscinski sued Harold Skinner in Connecticut Superior Court on December 3, 2015. His original complaint alleged that Skinner "was the owner of, and controlled, maintained, and/or possessed, a single family home located at 34 Skinner Road . . . also known as 65 Highland Avenue . . . ." (Skinner Complaint, ECF No. 15-1 at 22 ¶ 2) ("Skinner I"). Megan Koscinski, then fourteen, allegedly attended a party at the home on February 15, 2014, where "heroin and other narcotics were available and were used and/or consumed by plaintiff's decedent, among others." (Skinner I ¶ 3.) The Skinner I complaint alleged that, at the party, "[a]s a result of using heroin and other narcotics at the premises . . . Megan Koscinski became ill and unconscious, ultimately resulting in her death on February 16, 2014." (Skinner I ¶ 4.) The complaint alleged that Skinner negligently and carelessly caused Megan's death in one of the following ways:

   a. in that he failed to adequately supervise the plaintiff's decedent and other minors at the premises;
   b. in that he permitted parties at the premises when he knew or should have known that minors using alcohol and/or narcotic drugs were in attendance;
   c. in that he failed to control the conduct of those at the premises;
   d. in that he did not identify or stop the narcotics and/or alcohol consumption by minors at the premises, when, in the exercise of reasonable care, he could and should have done so.

(Skinner I ¶ 5.)

Skinner held a homeowner's insurance policy from Farm Family Insurance Company—Policy No. 0602G1294 ("the Policy"), which was in effect on the dates in Koscinski's complaint. (Defendant's Local Rule 56(a)2 Statement, ECF No. 15-2 at 2 ¶ 3) ("56(a)2 Stmt."). The Policy provided the following coverage:

> WE provide coverage under Section A – BODILY INJURY/PROPERTY DAMAGE, if a claim is made or a SUIT is brought against an INSURED for damages because of a BODILY INJURY or PROPERTY DAMAGE caused by an OCCURRENCE that takes place in the COVERAGE TERRITORY and to which this coverage applies.
> . . .
> WE provide coverage under Section B – MEDICAL EXPENSES for the necessary MEDICAL EXPENSES incurred and reported within three (3) years from the date of an OCCURRENCE causing BODILY INURY, provided that the OCCURRENCE takes place in the COVERAGE TERRITORY. . . .

(ECF No. 15-1 at 79-91.) The policy also included the following exclusion:

> Sections A and B do not apply to BODILY INJURY/PROPERTY DAMAGE or MEDICAL EXPENSES
> . . .
> 22. arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance. This exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician

(ECF No. 15-1 at 84.)

On January 6, 2016, Farm Family sent Skinner a letter acknowledging Koscinski's suit. (ECF No. 19-2 at 16.) The letter explained that the incident in the complaint fell within the exclusion in the policy for injuries or medical expenses "arising out of the use" of a controlled substance. (*Id.* at 17.) The letter specifically noted allegations that Megan Koscinski had attended a party at Skinner's home where "heroin and other narcotics were available and used," that she had used heroin as a result of Skinner's negligence, and that she had died of a heroin overdose. (*Id.* at 16.) On the basis of this exclusion, Farm Family refused to defend or indemnify Skinner in Koscinski's suit.

On March 7, 2016, Koscinski filed an amended complaint against Skinner, changing only the following two paragraphs:

> **Paragraph 4:**
> - **Original:** "As a result of using heroin and other narcotics at the premises, the plaintiff's decedent, Megan Koscinski, became ill and unconscious, ultimately resulting in her death on February 16, 2014." (Skinner I ¶ 4.)

3

- **Amended:** "At that time, while at the party, plaintiff's Decedent, Megan Koscinski, became ill and unconscious, ultimately resulting in her death on February 16, 2014." (Amended Complaint, ECF No. 19-2 at 23 ¶ 4) ("Skinner II")

**Paragraph 6:**
- **Original:** "As a result of the conduct of defendant, the plaintiff's decedent, Megan Koscinski, used and/or consumed heroin and/or other narcotics, became ill and unconscious and ultimately expired on February 16, 2014 from a heroin overdose." (Skinner I ¶ 6.)
- **Amended:** "As a result of the conduct of defendant, the plaintiff's decedent, Megan Koscinski, became ill and unconscious and ultimately expired on February 16, 2014." (Skinner II ¶ 6.)

The amended complaint still alleged that "Megan Koscinski . . . attended a party at the premises at which heroin and other narcotics were available and were used and/or consumed by the plaintiff's decedent . . ." (Skinner II ¶ 3.) It also alleged the same four bases for Skinner's negligence, including that he "knew or should have known that minors using alcohol and/or narcotic drugs were in attendance" and that "he did not identify or stop the narcotics and/or alcohol consumption by minors . . . ." (Skinner II ¶ 5.)

On March 8, 2016, Skinner's counsel sent a letter to Farm Family requesting reconsideration of their coverage determination in light of the amended complaint. (*Id.* at 20.) The letter argued that the amended complaint no longer fell within the controlled substances exclusion because it contained "multiple allegations of alleged negligence, none of which [were] exclusively predicated upon narcotics." (*Id.* at 22.) Farm Family again refused to defend or indemnify Skinner, noting that the amended complaint still alleged that Megan Koscinski used heroin and other narcotics at Skinner's home. (*Id.* at 30.)

On April 1, 2016, Skinner's counsel sent a letter to Farm Family alerting them to affidavits by Skinner and Skinner's granddaughter stating that, to their knowledge, no "party" was held and "there was no alcohol consumption . . . [and] no drug use by Megan Koscinski on February 14 or February 15, 2014" at Skinner's home. (*Id.* at 37-38.) Counsel sent a third letter on April 22, 2016,

4

reiterating Skinner's position that no narcotics had been used and arguing that Farm Family had a legal duty to defend and indemnify as a result of the two affidavits. (*Id.* at 35-36.) Farm Family once again refused Skinner's request. (*Id.* at 40-42.) It noted the two affidavits, but stated that the allegations of the amended complaint still brought the case within the controlled substances exclusion. (*Id.* at 41.)

On December 26, 2016, Skinner and Koscinski entered a stipulated judgment settling Koscinski's claims. (*Id.* at 44.) They agreed that judgment would enter in Koscinski's favor in the amount of $345,000. (*Id.*) Skinner agreed to pay $45,000 of the judgment. (*Id.* at 49.) Koscinski agreed to release Skinner from any liability for the remaining $300,000 and to seek satisfaction of the judgment from Farm Family. (*Id.*) Skinner also assigned all of his rights under the Policy to Koscinski in an agreement dated November 21, 2016. (*Id.* at 56.)

Koscinski filed this suit against Farm Family in Connecticut Superior Court on February 17, 2017 for the balance of the stipulated judgment. Farm Family removed the case to this Court on March 22, 2017, and now moves for summary judgment.

## II. Legal Standards

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (internal quotation marks and citations omitted). "In making that determination, a court must view the evidence in the light most favorable to the opposing party." *Id.* (quotation marks omitted). On summary judgment a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any

5

material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011).

Under Connecticut law, "[t]he question of whether an insurer has a duty to defend its insured is purely a question of law." *Lancia v. State Nat. Ins. Co.*, 134 Conn. App. 682, 689 (2012) (quotation marks omitted). "[T]he insurer's duty to defend is measured by the allegations of the complaint." *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 463 (2005) (quotation omitted). "If an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." *Id*. "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract." *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 311 Conn. 29, 37 (2014) (citations omitted). "In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Id*. "As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." *Id.*

"Because the duty to defend is significantly broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify." *DaCruz v. State Farm Fire & Cas. Co.*, 268 Conn. 675, 688 (2004) (internal quotation marks omitted). On the other hand, "where an insurer is guilty of a breach of its contract to defend, it is liable to pay to the insured not only his reasonable expenses in conducting his own defense but, in the absence of fraud or collusion, the amount of a judgment or settlement obtained against the insured up to the limit of liability fixed

6

by its policy." *R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 273 Conn. 448, 470–71 (2005) (internal quotation marks and alterations omitted).

### III. Discussion

The material facts in this case are essentially undisputed. Most significantly, there is no serious dispute that (1) Megan Koscinski's illness and death was an "occurrence" under the policy that would be covered but for the controlled substance exception (*see* ECF No. 19-1 at 14); (2) the "heroin and other narcotics" described in the underlying amended complaint are controlled substances (*see* ECF No. 15-1 at 13); and (3) the underlying amended complaint alleged that Koscinski used heroin and other narcotics. (56(a)2 Stmt. 4-5 ¶ 11.)[1] The only question is whether the controlled substance exception applies to Koscinski's amended complaint against Skinner. Because I find that it does, I conclude that Farm Family is entitled to summary judgment.

### A. The Injury in the Underlying Amended Complaint Arose Out of the Use of a Controlled Substance[2]

Koscinski argues that the underlying amended complaint in the underlying case triggered Farm Family's duty to defend because it is amenable to interpretations that do not implicate the controlled substances exception.[3] If the allegations in the complaint fall "even *possibly* within the

---

[1] Koscinski does not argue that the references in the complaint to "alcohol" or "other narcotics" create a possibility of coverage.

[2] For the sake of clarity, I refer to Koscinski's amended complaint against Skinner as "the underlying amended complaint" from this point forward.

[3] The original complaint in the underlying case clearly fell within the controlled substances exception. It alleged that Megan Koscinski died as a result of a heroin overdose. (Skinner I ¶ 6.) The underlying amended complaint removed the overdose allegation. (Skinner II ¶ 6.) The few Connecticut courts to consider the issue have concluded that the duty to defend depends only on the allegations in the operative complaint. *See Nationwide Mut. Ins. Co. v. Mortensen*, 222 F. Supp. 2d 173, 183 (D. Conn. 2002) ("A complaint which does not initially state a cause of action under the policy, and so does not create a duty to defend, may be amended so as to give rise to such a duty.") (quoting *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir.1983)); *W. World Ins. Co. v. 138 S. Gate, LLC*, No. CV146025075S, 2016 WL 1552946, at *3 (Conn. Super. Ct.

7

coverage, then the insurance company must defend the insured." *Hartford Cas. Ins. Co.*, 274 Conn. at 463 (2005). In this instance, if the allegations fall "even possibly" *outside* the controlled substances exclusion, then they fall within the policy and Farm Family had a duty to defend Skinner. The exclusion bars coverage for bodily injury and medical expenses that "arise out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance." (ECF No. 15-1 at 84.) "The trial court recognized that the term 'arising out of' is very broad . . . . [F]or liability for an accident or an injury to be said to arise out of an occurrence . . . , it is sufficient to show only that the accident or injury was connected with, had its origins in, grew out of, flowed from, or was incident to that occurrence . . ." *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 373-74 (2001) (internal quotation marks and alterations omitted).

Koscinski asserts that the underlying amended complaint does not necessarily implicate the use of heroin or narcotics, emphasizing that two of the four specifications of negligence do not mention controlled substances at all. First, the underlying amended complaint alleges that Skinner "failed to adequately supervise the plaintiff's decedent and other minors at the premises . . . ." (Skinner II ¶ 5(b).) Second, it alleges that Skinner "failed to control the conduct of those at the premises . . . ." (Skinner II ¶ 5(c).) If only these allegations and other allegations that do not relate to the use of heroin or narcotics were considered, however, the underlying amended complaint would fail to state any claim for relief. Without references to heroin or narcotics, the complaint states only that Skinner failed to supervise minors at a party and that Megan Koscinski became ill and passed away as a result. There is no specific factual allegation in the complaint to tie Skinner's alleged negligence to Megan Koscinski's death. Causation is an essential element of any

---

Mar. 29, 2016); *Town of Monroe v. Discovery Prop. & Cas. Ins. Co.*, No. CV126026835, 2015 WL 5315248, at *6 (Conn. Super. Ct. Aug. 11, 2015), rev'd on other grounds sub nom. *Town of Monroe v. Discover Prop. & Cas. Ins. Co.*, 169 Conn. App. 644, 151 A.3d 848 (2016).

negligence claim. *Murdock v. Croughwell*, 268 Conn. 559, 566, 848 A.2d 363, 367 (2004) ("The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury.") (quotation marks omitted). While Connecticut's pleading standards are less stringent than the plausibility standard in federal court, a plaintiff in Connecticut state court must still allege more than "mere conclusions of law that are unsupported by the facts alleged." *Fort Trumbull Conservancy, LLC v. Alves*, 262 Conn. 480, 498 (2003); *see also* Conn. Practice Book § 10-1 ("Fact Pleading. Each pleading shall contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved . . . .").

Koscinski's alternative interpretation of the underlying amended complaint is also contrary to its plain language. "The duty to defend does not hinge on the skill or manner in which a complaint is drafted, but rests on the substantive thrust of the complaint, and the surrounding facts." *R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 246 (2d Cir. 2002) (describing the duty to defend under Connecticut law). The underlying amended complaint is framed by the allegation that "Megan Koscinski, the plaintiff's decedent, . . . attended a party at the premises at which heroin and other narcotics were used . . . by the plaintiff's decedent, among others." (Skinner II ¶ 3.) The very next allegation is that "*[a]t that time*, while at the party, the plaintiff's decedent, Megan Koscinski, became ill and unconscious, ultimately resulting in her death on February 16, 2014." (*Id.* ¶ 4 (emphasis added).) These are the only factual allegations that describe the immediate cause of her death. The underlying amended complaint otherwise does not allege any facts suggesting what that cause might be. Indeed, the only plausible interpretation of the two specifications of negligence on which the plaintiff relies is that Skinner "failed to adequately supervise the plaintiff's decedent and other minors at the premises" and "failed to control the

9

conduct of those at the premises" by failing to take steps to prevent Megan Koscinski's ingestion of heroin and other narcotics. There is no other reasonable interpretation that connects Skinner's alleged negligence to her death.

Koscinski nevertheless asks the Court to read the underlying amended complaint to allege, as an alternative possibility, that his decedent's becoming ill, unconscious, and ultimately passing away was entirely unrelated to her heroin or narcotic use that night. An insured party cannot trigger the duty to defend simply by positing alternative interpretations of the complaint that torture its plain language and result in legally insufficient claims. *See Misiti, LLC v. Travelers Prop. Cas. Co. of Am.*, 308 Conn. 146, 163 (2013) ("Simply because we recognize the breadth of the term 'arising out of' and often interpret coverage ambiguities in favor of the insured does not mean that we will obligate an insurer to extend coverage based on a reading of the complaint that is conceivable but tortured and unreasonable.") (quotations and alterations omitted). I find that the language of the Policy and the underlying amended complaint are unambiguous, and the allegations in that complaint fall within the controlled substances exclusion in the Policy. Farm Family therefore had no duty to defend Skinner in the underlying case. Accordingly, Koscinski's claims in this case based on Skinner's rights under the policy must also fail.

**B. The Affidavits that Skinner Provided Did Not Trigger Farm Family's Duty to Defend**

Koscinski next argues that, even if the underlying amended complaint fell within the policy exclusion on its face, Farm Family had actual knowledge that the exclusion did not apply. "An insurer may be obligated to provide a defense not only based on the face of the complaint but also if any facts known to the insurer suggest that the claim falls within the scope of coverage." *Hartford Cas. Ins. Co.,* 274 Conn. at 466–67. Koscinski points to affidavits from Skinner and

Skinner's granddaughter stating that they did not personally observe Megan Koscinski using narcotics or alcohol at Skinner's home on February 14-15, 2014. (ECF No. 19-2 at 37-38.) Koscinski's argument, which cites the Connecticut Supreme Court's decision in *Hartford Casualty Insurance*, misconstrues that ruling. There, the underlying complaint did not establish that the named defendant fell within the definition of "insured" in the policy. *Hartford Cas. Ins. Co.*, 274 Conn. at 467. The insurance company had other sources of information, however, including the application for the insurance policy, showing that the defendant was an employee of the policyholder, bringing him clearly within the definition of "insured." *Id.* at 468. The court held that the insurer could not avoid its duty to defend simply because the complaint did not contain enough information to trigger the duty when the insurer had "actual knowledge of facts establishing a reasonable possibility of coverage." *Id.* at 467 (quotation marks omitted).

In this case, the affidavits do not provide new information from outside the complaint that would trigger a duty to defend. In particular, and contrary to Koscinski's argument, the affidavits do not negate the allegations in the underlying amended complaint that Megan Koscinski died after using heroin or other narcotics. Skinner and his granddaughter state that *they* did not have knowledge of Megan Koscinski's drug use on February 14-15, 2014. (ECF No. 19-2 at 37-38.) But Skinner's lack of knowledge of Megan Koscinski's heroin or narcotic use is consistent with the allegation in the underlying amended complaint that he failed to supervise her and other minors that night. Further, the granddaughter's affidavit does not attest that the she was with Megan Koscinski on February 14-15 or had an opportunity to observe her activities throughout her stay at the home. Thus, her statements neither support nor refute the allegations in the underlying amended complaint. In short, the affidavits did not present Farm Family with any facts indicating

that the controlled substances exclusion did not apply, let alone information sufficient to impute "actual knowledge" triggering its duty to defend.

## IV. Conclusion

I find that there is no question of material fact as to the applicability of the controlled substances exception, and the allegations in the underlying amended complaint clearly and unambiguously fall within the scope of that exclusion. Farm Family's motion for summary judgment is therefore GRANTED.

IT IS SO ORDERED.

                                                                                  /s/
                                                                      Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
                 September 28, 2018